# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:10-CR-377-VEH-HGD |
| | ) |
| JOSHUA PERSON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OF OPINION AND ORDER DENYING MOTION FOR A NEW TRIAL

## I. INTRODUCTION.

On December 7, 2012, Defendant Joshua Person ("Person") was found guilty by a jury verdict of one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count One).[1] On June 6, 2012, this court found that Person had four (4) previous convictions[2] that were "qualifying convictions" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e), and, accordingly, sentenced Person

---

[1] Person's offense conduct occurred on March 18, 2010, as described more particularly below.

[2] All four of Person's qualifying convictions are for Third Degree Burglary. In each case, Person pled guilty (twice on August 26, 1992; once on February 4, 1994; and once on April 15, 1994).

to the statutory minimum sentence of 180 months in jail. (Doc. 61 at 2.)

On March 14, 2012, new counsel for Person filed a Motion for a New Trial based in part on the ineffective assistance of Person's trial counsel (the "Inefffective Assistance Motion"). (Doc. 55.) The Government opposed the Ineffective Assistance Motion, asserting that it was untimely. (Doc. 56 at 2.) This court agreed that the Ineffective Assistance Motion was untimely, and denied it solely on that basis. (Doc. 58 at 4.)

On August 20, 2012, Person's third counsel filed a Motion for a New Trial based on newly discovered evidence. (Doc. 79.) On September 4, 2012, Person's counsel filed an amended Motion for a New Trial (the "Pending Motion"), which is substantively similar to the August 20 motion.[3] The Pending Motion asserts that the testimony of a previously unavailable witness, Mr. William Hall ("Hall"), would likely have produced a different result at Person's trial. (Doc. 86 at 3.) Specifically, Hall will testify that he put the gun at issue (a Ruger .40 caliber pistol) under the driver's seat of Person's car shortly before Birmingham Police Officer Michael Bridell confronted Person on March 18, 2010, and that Person had no reason to know the gun was there. The Government has filed its opposition. (Doc. 82, 87.) On

---

[3] As announced from the bench at the evidentiary hearing on September 7, 2012, the court considers a ruling on either motion to be a ruling on both motions. (Doc. 89 at 3.)

2

September 7, 2012, the court held an evidentiary hearing on the Pending Motion. The Pending Motion is now ripe for disposition. For the reasons stated hereafter, the court finds that the Pending Motion is due to be denied.

## II. STANDARD.

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Under Rule 33, the Court "may weigh the evidence and consider the credibility of witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). However, "[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. The evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id*. at 1312–13. Motions for new trials should be granted "sparingly," and only granted in "those really 'exceptional cases.'" *Id*. at 1313.

## III. THE MOTION IS TIMELY.

Rule 33(b) sets out the time limits for filing a motion for a new trial:

(b) Time to File.
    (1) Newly Discovered Evidence.
    Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.
    (2) Other Grounds.

3

> Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Additionally, these time limits are strictly applied and may not be extended by the district court for reasons other than those set out in Rule 33. *Eberhart v. United States*, 546 U.S. 12, 13, 126 S.Ct. 403, 403 (2005):

> Federal Rule of Criminal Procedure 33(a) allows a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." But "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within [14] days after the verdict or finding of guilty, or within such further time as the court sets during the [14]-day period." Rule 33(b)(2). This deadline is rigid. The Rules provide that courts "may not extend the time to take any action under [Rule 33], except as stated" in Rule 33 itself. Rule 45(b)(2).[4]

Thus, this court reaches the merits of the Motion.

---

[4] Former Rule 33 allowed only seven (7) days to file a motion for a new trial on any grounds other than newly discovered evidence. But, Rule 33 was amended in 2009 to allow defendants fourteen (14) days to file a motion for a new trial. *See* Fed. R. Crim. P. 33, advisory committee's note.

4

## IV. ANALYSIS.

Person argues that he is entitled to a new trial based on Hall's testimony. He asserts that this evidence is "newly discovered" because he could not locate Hall from the time he learned about the charge in this case until after his trial ended in December 2011. (Doc. 86 at 2.) Person also requests that this court consider the substance of his testimony in deciding whether Hall's testimony would likely have produced a different result at trial. (Doc. 86 at 7.)

### A. **Standard for "Newly Discovered" Evidence.**

Eleventh Circuit case law sets out the relevant standard for granting a new trial based on newly discovered evidence. *See, e.g.*, *United States v. DiBernardo*, 880 F.2d 1216, 1224 (11th Cir. 1989). To receive a new trial under Rule 33, a defendant must show that the "newly discovered" evidence satisfies the following test:

> (1) the evidence must be discovered after trial;
> (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence;
> (3) the evidence must not be merely cumulative or impeaching;
> (4) the evidence is material to issues before the court; and
> (5) the evidence must be of such a nature that a new trial would probably produce a different result.

*United States v. Jernigan*, 341 F.3d 1273, 1287 (11th Cir. 2003) (citing *United States v. Ramos*, 179 F.3d 1333, 1336 n.1 (11th Cir. 1999)); *see also DiBernardo*, 880 F.2d at 1224 (citing *United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988)). A

5

defendant's failure to establish any one of these five requirements is fatal. *See United States v. Starrett*, 55 F.3d 1525, 1554 (11th Cir. 1995).

### B. <u>Elements of Felon in Possession.</u>

To convict Person of the charged offense, the Government had to prove beyond a reasonable doubt that:

> (1) [he] knowingly possessed a firearm in or affecting interstate or foreign commerce; and
> (2) before possessing the firearm, [he] had been convicted of a felony—a crime punishable by imprisonment for more than one year.

Judicial Council of the Eleventh Circuit, Pattern Jury Instruction (Criminal Cases), Instruction 34.6, Possession of a Firearm by a Convicted Felon, 18 U.S.C. § 922(g)(1), at 236 (2010). "Knowingly" means that a defendant acted "voluntarily and intentionally and not because of mistake or accident." *See* Judicial Council of the Eleventh Circuit, Pattern Jury Instruction (Criminal Cases), Preliminary Instruction 9.1A, at 35 (2010).

"Possession" of an object may be either actual or constructive. *See* Judicial Council of the Eleventh Circuit, Pattern Jury Instruction (Criminal Cases), Special Instruction 6, at 61 (2010). A defendant "actually possesses" an object if he "knowingly has direct physical control of it." *Id.* A defendant "constructively possesses" an object if, though he "doesn't have actual possession of it, . . . [he] has both the power <u>and the intention</u> to take control over it later." *Id.*; *see also United*

*States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009) ("Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control."). "[A] defendant must, in fact, know of [a] firearm's existence in order to exercise dominion and control over it." *United States v. Pedro*, 999 F.2d 497, 500 (11th Cir. 1993). Moreover, "a defendant's mere presence in the area of an object <u>or awareness of its location is not sufficient</u> to establish [constructive] possession." *Id.* at 500–01 (internal quotation marks and citations omitted). The defendant must exercise ownership, dominion, or control over the object or have both the power <u>and the intent</u> to possess it. *See id.*; *Beckles*, 565 F.3d at 841.

## C. Evidence Adduced at Trial.

At trial, only two witnesses testified to the facts surrounding Person's arrest.[5] First, Officer Bridell explained how he found the gun in Person's car. According to Bridell, he was patrolling the Green Springs and Glen Iris area on March 18, 2012. (Doc. 48 at 190.) A civilian "ride-along" was accompanying him. (*Id.*) Around 5:00 p.m., he passed Person, who was driving a blue Crown Victoria in the opposite direction. (*Id.* at 191, 233.) Officer Bridell thought that Person was not wearing his

---

[5] The Government also called ATF Special Agent Keith Jordan, but his testimony concerned only the gun's connection to interstate commerce. (Doc. 48 at 215–17.)

seat belt. He turned around to investigate, but by the time he caught up with Person, he had parked his car. (*Id.* at 191–92.) Officer Bridell pulled over across the street, parked his patrol car, and got out. (*Id.*)

At that point, Officer Bridell noticed that Person's music was too loud.[6] He approached Person's car as Person was exiting it. He told Person that his music was too loud. Person apologized and asked for permission to turn the radio off, which was granted. (Doc. 48 at 192.) Officer Bridell then asked Person to sit in the back of his patrol car while he wrote him a noise citation. (*Id.*) Person politely crossed the street and complied with Officer Bridell's request. (*Id.* at 200.)

While Officer Bridell had Person detained in the back of his patrol car, he asked Person if "there was anything in the vehicle . . . I need[] to know about?" (Doc. 48 at 193.) Person truthfully responded that his son's pistol was underneath the driver's seat. (*Id.*) He also told Officer Bridell that his son had driven his car earlier in the day. (*Id.* at 202.) Officer Bridell then asked if Person had a permit for the gun. He truthfully answered "no." (*Id.* at 195.) Officer Bridell then placed Person under arrest for a City of Birmingham municipal code violation—i.e., carrying a weapon without a permit, a misdemneanor. On cross-examination, Officer Bridell admitted

---

[6] The City of Birmingham prohibits individuals from playing their music at a volume which can be heard from over fifteen (15) feet away. (Doc. 48 at 192.)

that the only evidence connecting Person to the gun was the fact that it was where he said it would be, underneath the driver's seat. (Doc. 48 at 204–05.)

Marguerite Johnson, Person's stepdaughter, testified in his defense. She confirmed that the gun belongs to William Hall, and that Hall was driving Person's car on the afternoon of March 18, 2010. She further testified that Hall came to her home in the early afternoon, and that she saw Hall get out of the car with his gun. Finally, she testified that, when Hall left her house that afternoon, he said he had to pick up Person. (Doc. 48 at 231.) After Johnson testified, the defense rested without calling additional witnesses.

### D. <u>Evidence Adduced at the Evidentiary Hearing</u>

William Hall was unavailable to testify at trial. However, he testified at the evidentiary hearing. Person contends that Hall's testimony establishes his unavailability at trial and is also new evidence which shows also that Person did not commit the charged offense.

Regarding Hall's availability at trial, Hall testified that he left Birmingham for Columbus, Georgia in August 2010, before the Government brought this case against Person. (Doc. 89 at 14, 26.) Hall did not leave any contact information. While in Columbus, he did not have a telephone. (*Id.* at 15.) A few months later, Hall left Columbus, Georgia for Memphis, Tennessee. (*Id.*) Again, he did not leave any

9

contact information. Hall did not return to Birmingham until late December 2011, after Person's trial had ended. (*Id.* at 17.)

During his absence, Hall never called or contacted Person. But, he did periodically call his mother, Wynette Hall. (Doc. 89 at 15–16.) Wynette Hall smokes crack cocaine. Hall left Birmingham to escape his mother's illegal activities, (*Id.* at 14.), but her struggle with drugs prompted him to check on her from time to time. (*Id.* at 16.) In their conversations, Wynette Hall never told her son about the federal charge against Person or otherwise communicated that Person wanted to speak with him. (*Id.*)

Regarding the events of March 18, 2010, Hall testified that he owns the Ruger .40 caliber pistol and that he drove Person's car that day. Person loaned him the car so that Hall could go to work. (Doc. 89 at 9.) Hall explained that he put the gun under the driver's seat because it would not fit in the glove box. (*Id.*) When Person got off work early, Hall left his job and returned the car to Person. (*Id.* at 11.) Hall was in a hurry and forgot to retrieve his gun from under the driver's seat. Person then dropped Hall back off at Hall's work. (*Id.*) Hall further testified that he never told Person about the gun. (*Id.*)

Person did not testify in his defense at trial. However, at the evidentiary hearing, Person explained his side of the story. On March 18, 2010, while Person was

at work at the University of Alabama-Birmingham, he loaned Hall his car. When Person got off work at four o'clock instead of six o'clock, Hall picked him up. Person then drove Hall back to work before Person returned home in the car. Person testified that Hall never told him about the gun, and that he had no idea it was under the driver's seat. (Doc. 89 at 28–30.)

When Person got home, his wife asked him to take some ribs to Marguerite Johnson's home for a barbeque. (*Id.* at 29.) While driving to Johnson's home, Person passed Officer Bridell. After he parked his car at Johnson's home, he leaned over to pick up the ribs, which were in the car's floorboard. (*Id.*) At that moment, and not before, Person noticed the gun under the driver's seat. (*Id.* at 30.) Almost simultaneously, Officer Bridell approached the car and told Person his radio was too loud. (*Id.* at 30.)

Person's trial counsel apparently advised him not to testify at trial because trial counsel feared the Government would cross-examine Person about his felony convictions. (Doc. 55 at 2.) Instead, Person's trial counsel focused his evidence and arguments on the fact that Hall owned the gun, and that the Government had not proven that Person knowingly possessed it. (Doc. 48 at 221–22.) While this may have been a reasonable trial strategy because Hall was unavailable to testify, the record is insufficiently developed for the court to determine whether or not trial

counsel's performance was constitutionally deficient. *See, e.g.*, *United States v. Griffin*, 699 F.2d 1102, 1107 (11th Cir. 1983) (refusing to consider on direct appeal an ineffective assistance claim because it was not presented to the district court and because there was no opportunity to develop the record on the merits of the defendant's claims). For example, the court cannot discern: (1) if trial counsel knew that Person had discovered the gun only moments before Officer Bridell confronted him; (2) if trial counsel tried to find Mr. Hall (the only evidence before this court is that <u>Person</u> tried to find Hall); or (3) if trial counsel understood—much less explained to Person—the potential significance of his testimony about finding the gun "virtually simultaneous[ly]" (Doc. 89 at 30) with his encounter with Officer Bridell, and how this testimony would weigh on the element that he "knowingly" possessed the gun.[7]

Indeed, "the term 'knowingly'. . . requires <u>proof of knowledge of the facts that constitute the offense</u>." *Bryan v. United States*, 524 U.S. 184, 193, 118 S. Ct. 1939, 1946 (1998); *see United States v. Dominguez*, 661 F.3d 1051, 1068 (11th Cir. 2011). Thus, an act is not done "knowingly" unless it is done "voluntarily and intentionally." If the defendant does an act by "mistake or accident," then he does not act "knowingly." Regarding a felon-in-possession charge, a defendant must "voluntarily

---

[7] The court does not suggest that Person's counsel may not have been constitutionally deficient in other respects.

and intentionally" possess a gun. *See United States v. Deleveaux*, 205 F.3d 1292, 1298 (11th Cir. 2000) ("The prosecution need show only that the defendant consciously possessed what he knew to be a firearm.") (citing *United States v. Jones*, 143 F.3d 1417 (11th Cir.1998)); *United States v. Sherbondy*, 865 F.2d 996, 1002 (9th Cir. 1988) (" . . . we conclude that an 'unknowing' act cannot constitute a violation of section 922(g).")

The requirement of "voluntary and intentional" possession is further emphasized in the context of constructive possession. In this context, a defendant's knowledge that a gun is located in a particular place is insufficient to establish knowing possession. *See Pedro*, 999 F.2d at 500. The defendant must have knowledge of the gun's existence and both the "<u>**intent** and the power to exercise . . . **control** over the [gun]</u>." *Id.* (citing *United States v. Mieres-Borges*, 919 F.2d 652, 657 (11th Cir. 1990)) (emphasis supplied).

Of course, it is well settled that the government need not prove that a defendant possessed a gun for a particular purpose. *See United States v. Deleveaux*, 205 F.3d 1292, 1298 (11th Cir. 2000). And, the Eleventh Circuit has never recognized the defense of transitory, innocent possession. *See United States v. Palma*, 511 F.3d 1311, 1316 n.3 (11th Cir. 2008) (expressly declining to reach the issue). But, it is equally well settled that a defendant must have the requisite general *mens rea* before

13

he is guilty of a crime. *See, e.g.*, *Morissette v. United States*, 342 U.S. 246, 251–52, 72 S. Ct. 240, 244 (1952) (describing the fundamental principal that crime is a compound concept which results from the "concurrence of <u>an evil-meaning mind</u> with an evil-doing hand"). In other words, a defendant does not knowingly possess a firearm in violation of § 922(g)(1) unless he voluntarily and intentionally exercises control over a firearm.

The court has reason to doubt that Person's trial counsel understood the significance of "knowing possession" in this case. For example, trial counsel moved for a judgment of acquittal at the close of the Government's case. (Doc. 48 at 221.) Counsel argued, "The government has failed to prove that [Person possessed the gun] voluntarily and intentionally and not because of mistake or accident." (*Id.*) But, immediately thereafter, trial counsel elaborated on this argument: "From Officer Bridell, the statement that the defendant made at the scene that the gun was his son's, that his son had been in his car that day has been uncontroverted. It has not been contradicted." (*Id.* at 221–22.) This statement emphasizes Person's lack of <u>ownership</u> of the gun rather than Person's lack of <u>knowledge</u> that the gun was under the driver's seat. In fact, the Government responded to trial counsel's argument, in part, by saying, "defense counsel is attempting to conflate ownership with possession where those are two separate ideas altogether." (*Id.* at 223.)

At trial, the court reserved ruling on Person's Motion for a Judgment of Acquittal. (Doc. 48 at 224, 238.) But, if the court had had the benefit of Hall's and Person's testimony at trial, the court very likely would have granted Person's motion for an acquittal.[8] Hall's and Person's testimony is credible and demonstrates that Person never voluntarily and intentionally possessed the Ruger .40 caliber pistol on March 18, 2010. After Person learned that the gun was underneath the driver's seat, he had absolutely no time to distance himself from the gun, other than to get out of his vehicle, cross the street with Officer Bridell, get in the back seat of Officer Bridell's patrol car, and answer Officer Bridell's questions, thus immediately informing a police officer of the gun's location. Therefore, his actions were not "knowing and voluntary."

Additionally, the Government's proof, when supplemented by Hall's and Person's testimony, does not establish that Person actually or constructively possessed the gun. There was no evidence that Person ever exercised direct physical control over the gun. (Doc. 48 at 204.) Nor did he take any action (in fact, he had no time to take any action) which indicates any intent to exercise control over the gun. Further, virtually simultaneously with Person's discovery of the gun, he encountered

---

[8] The court declines to speculate what evidence the Government may have presented to rebut Person's and Hall's testimony.

Officer Bridell and promptly told him of the gun and its location. Although the intent necessary for constructive possession can usually be inferred from a defendant's exercise of control over a vehicle where the contraband is found, *see United States v. Salinas-Salinas*, 555 F.2d 470, 473 (5th Cir. 1977) ("[c]onstructive possession may be shown by ownership, dominion or control over . . . the premises or the vehicle in which the contraband was concealed."), such an inference is unreasonable here.

### E. Neither Hall's Testimony Nor Person's Testimony Meets the Standard for "New Discovered" Evidence under Rule 33.

Nonetheless, Hall's testimony is not newly discovered evidence under binding authority from the Eleventh Circuit, because Person knew that Hall was a potential witness before his trial in December 2011. Moreover, Person knew or should have known the substance of Hall's testimony before his trial. Eleventh Circuit case law requires that, for evidence to be "newly discovered," it must be discovered <u>after</u> trial. *See, e.g.*, *Starrett*, 55 F.3d at 1554. The Eleventh Circuit has rejected claims that known but unavailable evidence meets the definition of "newly discovered" evidence under Rule 33. *See DiBernardo*, 880 F.2d at 1225; *United States v. Metz*, 652 F.2d 478, 480 (5th Cir. Unit A Aug. 1981) (holding that the newly available testimony of a co-defendant who was unavailable to testify at trial because he had invoked his right to remain silent is not newly discovered evidence under Rule 33).

Similarly, Person's testimony is not "newly discovered" evidence. It is

16

uncontroverted that Person knew what he would testify to before trial.

Person argues that cases such as *DiBernardo* and *Metz* are distinguishable because they involved the exculpatory testimony of co-defendants which were unavailable because the co-defendants had invoked their respective Fifth Amendment rights against self-incrimination. The court finds that Person has not adequately distinguished the facts of his case from the Eleventh Circuit's binding authority. In both *DiBernardo* and *Metz*, the court focused, not on the reason the evidence was unavailable, but on the fact that the defendant knew of the evidence before his trial ended. *See DiBernardo*, 880 F.2d at 1224; *Metz*, 652 F.2d at 479 (requiring that "evidence [be] unknown to the defendant at the time of trial"). *But see United States v. Montilla-Rivera*, 115 F.3d 1060, 1066 (1st Cir. 1997) (holding to the contrary and observing "there seems little distinction between evidence which a defendant could not present because he did not know of it and evidence which he could not present because the witness was unavailable despite exercising due diligence")

Still, the court is troubled by the fact that Person's trial counsel's apparently failed to (1) investigate the facts, (2) understand the significance of Hall's and Person's testimony, and/or (3) counsel Person about the significance of his testimony before the trial ended. If Person's trial counsel failed as to any of these, then counsel's performance in preparing and presenting Person's defense may have been

17

constitutionally deficient. Moreover, if counsel committed any of these errors, then Person's decision not to testify in his defense may not have been knowing and intelligent.

Additionally, Person's trial counsel failed to timely move for a new trial under Rule 33. This lack of timeliness was itself likely ineffective assistance, especially when coupled with the undersigned's finding that Hall's and Person's testimony would very likely have made a difference such that this case would not have gone to the jury. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 385, 106 S. Ct. 2574, 2588 (1986) (counsel's failure to file a timely suppression motion because of his failure to investigate the case was ineffective assistance of counsel). Finally, Person's trial counsel failed to move for a new trial within the fourteen day window in Rule 33 based on his own ineffective assistance at trial.[9]

Because the court finds that Hall's and Person's testimony would likely have produced a different result at trial, the failure to present this testimony affected Person's substantial rights. *See* 3 Charles Alan Wright, *Federal Practice and Procedure*, § 581 (4th ed. 2011) ("New trial motions are subject to the harmless and plain error provisions of Rule 52; if the substantial rights of the defendant are not

---

[9] Thus, these ineffective assistance issues will have to be taken up in a Motion To Vacate under 28 U.S.C. § 2255, if one is timely filed.

affected, the court should refuse to grant the defendant's motion."); 3 Wright, *Federal Practice and Procedure*, § 581 ("A motion for a new trial is based on the presumption that the verdict against the defendant is valid; therefore the burden is on the defendant to demonstrate that a new trial ought to be granted.") But for Person's failure to meet the Eleventh Circuit's standard for a new trial based on "newly discovered" evidence, the court would grant Person's motion for a new trial.

V. **CONCLUSION.**

For the reasons stated above, the court finds that the Pending Motion (Doc. 79, 86) is due to be, and hereby is, **DENIED**.

**DONE** and **ORDERED** this the 21st day of September, 2012.

                                    **VIRGINIA EMERSON HOPKINS**
                                    United States District Judge